[No. 3238. Dec. 17, 1928.]

STACEY v. WHALEN et ux.

[273 Pac. 761.]

J. S. Vaught, of Albuquerque, for appellants.

J. Lewis Clark, of Estancia, for appellee.

OPINION OF THE COURT

BICKLEY, J.  Appellee (plaintiff) filed suit in a justice of peace court in Bernalillo county against appellants herein, to recover a broker's commission of $125, alleged to be due plaintiff for the sale of defendants' residence property, situated in the city of Albuquerque.  The justice of the peace rendered judgment in favor of plaintiff for $125.  The defendants (appellants) appealed to the district court of Bernalillo county, and, the cause being tried to the court without a jury, judgment was given the plaintiff for the sum of $125 and costs.

The district court made the following findings:

"The Court finds that the plaintiff interested Bolt in the property and that he quoted him first the price of $3800.00 and later the price of $3700.00, and that Bolt seemed to be interested in the property.  Plaintiff introduced Bolt to the owner and was the pro-

curing cause of the owner selling to Bolt. After plaintiff had shown the property to Bolt and quoted him a price of $3700.00 Bolt took up negotiations for purchase of the house with one Knight. Bolt made a counter proposition which was telegraphed to the owner and accepter, and thereupon Bolt closed the transaction with the owner through Knight, and purchased the house at $3700.00. The house was first shown to Bolt by Stacey on the 4th of October, 1924, and the transaction was finally closed between Bolt and the owner on October 10th, 1924. It seems very clear to the Court that the plaintiff was the procuring cause of the sale and the Court can see no reason why he should be deprived of his commission. It is ordered that these findings be filed as a part of the record."

The defendants requested the court to make three separate findings of fact, one of which the court adopted, one he refused, and the other he refused in part. The defendants requested that upon the findings of fact proposed by them that the court make certain conclusions of law, which the court refused.

The first proposition advanced by appellants is that the court's findings of fact and conclusions of law are not sustained by sufficient evidence. The appellants also complained of the action of the court in refusing to make certain findings of fact requested by them. These requested findings in the main were diametrically opposed to the findings made by the court.

We have carefully considered the record, and find substantial evidence to support the findings of fact made by the trial court, and no error on account of the refusal of the court to make the findings of fact requested by the defendants, unless there was some irregularity in the conduct of the trial judge, which we will next consider.

Appellants' assignment of error No. 9 is as follows:

"The District Court erred by consulting with one Linus H. Shields outside of the Court room and not during the progress of this trial about a material matter in controversy in this case, said matter being whether or not the plaintiff, Stacey, had testified at the original hearing in this case before a Justice of the Peace to the effect that he never offered the property in question for sale to Mr. Bolt at any price other than Thirty-eight Hundred Dollars ($3800), the said Shields in answering such questions propounded by the said District Court was not under oath, and that neither defendants nor their attorneys were present nor given an opportunity to be present, and were not then or at any time given an opportunity to cross-examine the said Shields, and that the state-

ments made at said time by the said Linus H. Shields to the District Court were used by the District Court in making his findings of fact and conclusions of law in this case, which were unfavorable and unfair to the defendants herein."

It appears that Geo. H. Whalen, one of the appellants (the husband of the other appellant), listed this property for sale with appellee at a price of $3,800, on which he would pay a 5 per cent. commission, or that he would take $3,700 for the property and pay $125 commission. Appellee testified that he offered the property to the purchaser for $3,800 and afterwards for $3,700. The purchaser, a witness for the defendants, denied that appellee had offered the property at $3,700, and testified that no better price was made by appellee than $3,800. Counsel for appellants sought to impeach the testimony of appellee, laying a foundation therefor by asking him if he did not testify in the justice of the peace court that he never made any other price to the purchaser than $3,800. The witness denied having so testified. A Mr. Knight, called as a witness for defendants for the purpose of impeaching appellee's testimony, and otherwise, testified that he was present at the hearing in the justice of the peace court and distinctly remembered that the appellee there testified that he never offered the property in question otherwise than at $3,800. After the parties had announced that they rested the case, the following transpired:

"Examination by the Court:

"The Court: Now, there is one thing in this case that I dislike to see, and that is a flat contradiction here between responsible men on a point in the case; I don't think the point is so important, to be perfectly frank with you, but I would like to ask you some more about it. You have said that you offered this property to Mr. Bolt at $3700.00? A. Yes.

"Q. And he said he doesn't remember that? A. Yes.

"Q. There is no necessary inconsistency there. But you have said that at the hearing of this case in the J. P. court you testified there that you did offer it to him at $3700.00? A. Yes.

"Q. And that is flatly denied by one of the witnesses (who) why says that he remembers distinctly that you said you offered it only at $3800.00; how about your testimony in the lower court? A. The opposing counsel tried to get me to answer no or yes and I asked the Justice if I had the privilege to speak, and I denied that flatly; that was his technical point was to keep me away from my point of $3700.00 and stay on the question of $3800.-00. I denied it then openly.

"Q. As I say, I don't think it makes any difference in the case but I can't stand for these differences in testimony under oath by various witnesses. You say that in the Justice Court you absolutely denied it? A. Yes, sir.

Q. What part of the proceedings in Justice Court?

A. When I was on the stand.

Q. In cross-examination?

A. In the cross-examination. My wife is a witness to that also; also Mr. Shields, my former lawyer.

The Court: I want to have the benefit of Mr. Shield's testimony and see if Mr. Shields can straighten that out for me. I will say this, that I don't think it makes a particle of difference whether the plaintiff did or did not offer it at less than $3800.00, this idea of trying to ascribe the failure to make the sale to his negligence in not offering an alternative price does not strike me as of much consequence. All of the agents had the $3800.00 authority, and the agent who did make the sale according to the theory of the defendant made exactly the same offer that the plaintiff did, they both did exactly the same thing and in subsequent negotiations the owner finally came down. The Court is also impressed with another thing here, that there is only one witness for the plaintiff, and that is about all there can be, and the Court has not the benefit of the defendant's version of this thing, and the plaintiff has testified at great length as he has legal right to do, as to various statements made by the defendant and the defendant's wife and, as a matter of cold legal presumption, they go unchallenged. I don't know whether the defendants are in town or not—

Mr. Vaught: No, they have moved away.

The Court: If not, you should have had their deposition. I think the Michigan case read by counsel clearly holds against the weight of authority, and they probably put it into L. R. A. for that reason, because it is against the weight of authority. The notes cited under the case are almost unanimous, holding contrary to the case. However, I am not deciding the case right now. I am giving counsel the benefit of my views. The case will not be decided until I have had a chance to examine Mr. Linus Shields."

We have quoted the record thus in full, because such is the basis of appellants' assignment of error, No. 9, heretofore quoted.

It is appellants' argument that while it is conceded that where there is any evidence to support the court's findings, the findings will not be disturbed unless there is clearly shown to be an abuse of discretion and that while the testimony in this case unattended by any irregularities in the proceedings would warrant us in sustaining the find-

ings of the lower court, that the trial court was in doubt and must have become convinced only after an examination of Mr. Linus Shields and that this witness was examined out of the court room, away from the presence of the parties to the suit and without the benefit of cross-examination by the defendants' counsel and so, in violation of the rights of the defendants.

Unfortunately for appellants, the question he presents here was not raised and properly preserved for review in the trial court and therefore will not be noticed on appeal.

In 3 C. J. on Appeal and Error, under "Preservation and Reservation in Lower Court of Grounds of Review," at § 887, it is said:

"Remarks and Conduct of Judge.—Improper remarks made by the trial judge to the jury, or in their presence, or during any ruling on a question of evidence, or relative to the examination of a witness, or during the examination of a witness, must be made the basis of a motion for a new trial in order to present objections based on such grounds to the reviewing court. The judgment cannot be impeached because the judge left the court room during the argument, unless such action was made the ground for a new trial."

Whether chapter 42 and § 25 of chapter 43, Laws of 1917, make a motion for a new trial in such a case unnecessary, we need not decide. Section 4230, Code 1915, provides that:

"Judgments may be set aside for irregularity, on motion filed at any time within one year after the rendition thereof."

In the case at bar, there was no objection to the conduct of the trial judge now complained of; no exception taken thereto; no motion to set aside the judgment for irregularity was made, nor any other proceedings taken to call attention of the trial court to his alleged misconduct, in order to obtain a ruling or decision thereon. In this state of the record, the judgment will not be reversed on account of the irregularity assigned here for the first time.

Counsel for appellants cites authorities to the effect that where the customer introduced by a broker who is authorized to sell property for a certain price, after refusing to pay such price, purchases from the owner for a

less sum, the broker is not entitled to a commission. These cases are said by appellee to be not in accord with the weight of authority.

It is not necessary for us to go into that, because in view of the findings of the Court, the cases cited by appellants are not applicable.

One finding of fact of the Court, the making of which is assigned as error, was:

"It seems very clear to the court, that the plaintiff was *the procuring cause of the sale*, and the court can see no reason why he should be deprived of his commission."

The question of "procuring cause" was one of fact. See Wood v. Smith, 162 Mich. 334, 127 N. W. 277. In Walker's Real Estate Agency, (2nd Ed.) 1922, § 446, it is stated:

"The agent who is the procuring cause of the sale is entitled to compensation,"

the author citing authorities from forty jurisdictions, including New Mexico. In Jackson v. Brower, 22 N. M. 615, 167 P. 6, we define "Procuring Cause" as follows:

"A real estate agent is the procuring cause of a sale or trade of real estate placed in his hands for sale or trade, when the sale is traced to his introduction of the purchaser to the owner or principal."

We there referred to a case note to Hoadley v. Savings Bank of Danbury, 44 L. R. A. 321, where a large number of cases are cited, among them Brennan v. Roach, 47 Mo. App. 290, where the court said:

"In the absence of a distinct contract that the commission is to be paid to the agent who first consummates the sale, it belongs, as in other cases, to the agent whose exertions are the procuring cause of the sale. After he has shaken the tree, another agent is not to be permitted to run up and carry off the fruit; and if the owner allows this to be done, he is responsible to the first agent."

Las Vegas Realty & Insurance Co. v. Sparks, 29 N. M. 77, 218 P. 345, cited by appellant, is readily distinguishable. So, if the finding stands, as it must, there is no error in the application of the law and the judgment is correct.

Finding no fundamental error in the record, the judgment will be affirmed and the cause remanded, with directions to enter judgment thereon against the principal and sureties on the supersedeas bond; and it is so ordered.

PARKER, C. J., and WATSON, J., concur.